RECEIV
06 2020

district court of the United States
Southern District of Ohio
Eastern Division
85 Marconi Blvd.
Columbus, OH 43215

| | |
|---|---|
| John Allen<br>3561 Rangoon Dr.<br>Westerville, Ohio 43081; and<br>J. Does,<br><br>Plaintiffs<br><br>v.<br><br>eBay, Inc.<br>2025 Hamilton Ave.<br>San Jose, CA 95125;<br>Pierre and Pamela Omidyar<br>C/o Honolulu Civil Beat<br>3465 Waialae Ave. #200<br>Honolulu, HI 96816; and<br>J. Does,<br>Defendants | Civil No. 2 20CV1744<br><br>Judge: Judge Sargus<br><br>**Civil Complaint**<br>MAGISTRATE JUDGE VASCURA |

## I. JURISDICTION:

Plaintiffs aver on information and belief, and upon reasonable investigation and research that Federal RICO laws 18 USC 1961-1968 do not frustrate the goals of any laws regulating Internet advertising in either the States of Ohio or of California, and further that the district court of the United States for the southern district of Ohio has jurisdiction in this matter:

1) Federal District court has jurisdiction by statute under
   1. 18 USC 1964(a)
   2. 28 USC 1331
   3. 28 USC 1339

2) There is Diversity of Citizenship, 28 USC Sec. 1332 regarding the tortuous actions alleged and violations of 18 USC 1962 (RICO), and 18 USC 1951 (Hobbs) by Defendants, since continuity of these actions spans a time when Plaintiffs lived in Ohio until the present.

3) There is a further complete diversity of citizenship since the Defendants' State of incorporation is California, while Plaintiffs are residents of the State of Ohio.

4) Plaintiffs' allegations are directly against eBay and its officers which do business in many States of the United States; the home offices of eBay are in California, of which it is a citizen.

5) On information and belief, eBay is a Foreign Corporation doing business in the State Of Ohio.

6) Based on the preceding, the allegations contained herein constitute a matter which affects Interstate Commerce, and presents a condition of "complete diversity of citizenship"; the matter, therefore, falls within Federal Jurisdiction, and specifically again under 18 USC 1951(b)(3) of the Hobbs Act.

7) Although there does exist a RICO provision in the Ohio Revised Code, ORC 2923.31, which appears to be an elaboration of 18 USC 1961, et seq., and explicitly prohibits the prohibited acts of 18 USC 1962, Plaintiffs cannot find such a cognate provision in the State of California. From these circumstances and further supporting documentation, it is the conclusion of Plaintiffs that their appropriate pleadings would be unwelcome in the State Courts of both Ohio and of California.

All the preceding leaves the pursuit of justice possible only within the jurisdiction of the above-captioned court.

8) There is relevant Federal law regarding patterns of racketeering activity, RICO, and specifically also with regard to both mail and wire fraud, 18 U.S.C 1341 and 18 U.S.C 1343 respectively, as well as extortion, (Hobbs). Therefore, The ERIE doctrine is irrelevant, and the matters herein should be considered only within the bounds of Federal Law.

9) The federal law of the preceding paragraph is not in any "direct conflict" with any laws of the States of Ohio or California, and specifically it does not "invalidate, impair, or supersede" any laws of these States which regulate Internet advertising.

10) The amount of controversy well exceeds the statutory sum of $75,000.

**II. VENUE:**

The above-captioned court is the only appropriate venue in this matter:

11) Plaintiffs reside, and have resided in Franklin County, Ohio for longer than three (3) years; Franklin County lies within the above-captioned court's jurisdiction.

12) Defendants do business in the State of Ohio and have representatives in Ohio.

13) Any change of venue to a different district, for whatever reason, would cause such economic hardship, physical distress and possible physical injury to plaintiffs so that this case could not be litigated, and would negate, utterly, the pursuit of justice.

**III. STANDING AND PLAINTIFFS' RIGHT TO RELIEF:**

The Plaintiffs have standing in this matter, and in the above-captioned court:

14) Plaintiffs reside, and have resided in Franklin County, Ohio for longer than three (3) years; Franklin County lies within the above-captioned court's jurisdiction.

15) Plaintiffs had an Internet account with Defendants which Plaintiffs now claim multiple causes of Federal action. A properly filed Notice of Dispute and an Opt-Out Notice was submitted to Defendants on March 3, 2020, but no response has been submitted by Defendants.

16) This is a matter which devolves upon the interference by Defendants, in legitimate interstate commerce through its genuine pattern of racketeering activities.

17) Plaintiffs have been "stonewalled" by Defendants actions in denying advertising which had been previously advertised with Defendants.

## IV. BACKGROUND AND FACTS OF THE CASE:

18) Plaintiffs together held Internet advertising agreements with Defendants.

19) Plaintiff, John Allen, previously placed an ad with Defendants selling items for $4,470,000.

20) Because Mr. Allen's items did not sell, Mr. Allen placed the same ad with a discounted price of $3,000,000, but Defendants refused to publish Mr. Allen's ad.

21) The various acts forming a pattern of racketeering are that Defendants routinely deny ads that have previously been placed with Defendants.

22) These patterns of racketeering activity, fraud, conspiracy to commit fraud and extortion were committed using communications by email.

23) These patterns of racketeering activity, fraud, conspiracy to commit fraud and extortion were committed using the Internet.

## V. EBAY'S USER AGREEMENT IS UNCONSCIONABLE AND PREJUDICIAL

24) eBay actively solicits business from Ohio consumers via internet, direct mail, and telephone. They routinely call Ohio residents and registered users in order to inform them of upcoming discount programs. Plaintiff is located in Ohio, monies paid to eBay were deducted from Plaintiffs Ohio based checking account or his Paypal account which was connected to his checking account. eBay solicits and maintains "pack and ship" eBay stores throughout Ohio, and the contracts between eBay buyers and Plaintiff were formed electronically in Plaintiffs Ohio residence by use of the business model eBay created. To the extent that eBay failed or deliberately neglected to institute proper and prudent controls in that business model which would serve to protect sellers, they have violated the public policy of Ohio. They should not be allowed to avoid accountability under the laws of the states they choose to conduct business in by what amounts to forcible forum shopping. The 2012 agreement in force when Plaintiffs account was suspended suggests that lawsuits should be brought in Santa Clara, California.

25) California has not adopted the Uniform Deceptive Trade Practices Act. Unfair Trade Practices in California only pertain to false or misleading advertising (Professions Code § 17500 et seq.) and turning back odometers (Sections 28050 and § 28051.5, California Vehicle Code.) To force Plaintiff to litigate his case in California is prejudicial due to California's lack of a meaningful consumer protection act.

26) Our Supreme Court has adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws for analyzing choice of law issues involving contracts. Therefore, considering eBay's choice of law provision should not apply to the instant action should they raise the issue California has no interest in the instant action other than the fact that eBay maintained an office there. (They have since moved to Utah.) Ohio has the most significant relationship, Plaintiff is an Ohio resident, and Ohio may be exposed to financial liability should Plaintiff find it necessary to seek economic assistance from the state as a result of having his business unfairly terminated by eBay, something which has already happened.

27) eBay's "user Agreement" contained and still contains numerous questionable, self-serving disclaimers and liability releases that favor eBay and unfairly restrict what an injured consumer can allegedly do. Such restrictions violate the fundamentals of contract law as well as the common law policy of good faith and fair dealing. A declaration of "We can't be held responsible for anything and you can't do anything about it" is

hardly fair, nor does it constitute a reasonable meeting of the minds. Excerpts from the 2012 User Agreement below detail the manner in which eBay seeks only to protect themselves and avoid responsibility for the unfair manner in which they treat sellers. This agreement has been modified numerous times by eBay, to the detriment of sellers who have developed a dependency on eBay. (It is noteworthy that older agreements mysteriously disappeared from the eBay site shortly after Plaintiff complained of the treatment he received).

a You will not hold eBay responsible for other users' content, actions or inactions, items they list or their destruction of allegedly fake items.

b You acknowledge that we are not a traditional auctioneer.

c We are not involved in the actual transaction between buyers and sellers d we have no control over and do not guarantee the quality, safety or legality of items advertised, the truth or accuracy of users' content or listings, the ability of sellers to sell items, the ability of buyers to pay for items, or that a buyer or seller will actually complete a transaction or return an item (eBay thereafter contradicts this claim by interposing themselves in transactions as the final arbiter of the quality of goods when there is a dispute, routinely ruling against sellers).

d We are not liable for any loss of money, goodwill or reputation, or any special, indirect or consequential damages arising, directly or indirectly, out of your use of or your inability to use our sites, services and tools (This clause boggles the mind no court should enforce such a blatant declaration of self-declared immunity).

e Regardless of the previous paragraphs, if we are found to be liable, our liability to you or to any third party is limited to the greater of:

(1) any amounts due under the eBay Buyer Protection Policy up to the full cost of the item (including any applicable sales tax) and its original shipping costs,

(2) the total fees (under eBay Fees and Services) you paid to us m the 12 months prior to the action giving rise to the liability, and

(3) $100 (This clause affects only buyers There is no clause to protect the sellers the buyers victimize Buyers pay NO fees to eBay, they are all paid by sellers).

f If you have a dispute with one or more users, you release us (and our officers, directors, agents, subsidiaries, joint ventures and employees) from claims, demands and damages (actual and consequential) of every kind and nature, known and unknown, arising out of or in any way connected with such disputes (The dispute is with eBay for allowing their buyers to wreak havoc on seller's businesses with no consequences).

g If you are a California resident, you waive California Civil Code §1542.

h We do not guarantee we will take action against all breaches of this Agreement. (They don't, buyers are virtually exempt from the rules while eBay demands consumers waive their rights under applicable laws.)

28) The conduct complained of herein does not involve monetary disputes with other users, rather the way m which eBay's business model allows, facilitates, and encourages the underlying conduct of buyers. Virtually all of the above disclaimers allegedly absolve eBay of any wrongdoing when a dispute arises between users. Such releases do not express the parties' mutual intention, they are, rather, a one sided declaration designed to protect one party at the expense of the other. Such releases are unfair, unconscionable, and should not be enforceable. eBay has designed and executed a business model that holds itself out to the public as fair and equitable, while at the same time allowing, and thereby ratifying as acceptable, buyer conduct which is slanderous, libelous, unscrupulous, extortionate, and in some cases illegal. When said conduct is resisted by
sellers and results in buyers leaving untrue, undeserved reviews, eBay blames the seller and suspends them. eBay's User Agreement contains an arbitration clause which specifies the American Arbitration Association ("AAA") as the forum. The User Agreement specifies "consumer rules (as applicable)" in the clause.

## VI. PLAINTIFF HAS NEVER VIOLATED THE EBAY USER AGREEMENT

29) The User Agreement sets forth approximately thirty violations for which a user can face disciplinary actions. At no time during his five years on eBay had Plaintiff committed any of the subject violations, nor had he ever faced disciplinary measures as a result of same. Plaintiff's policy compliance has consistently been above standard. The user agreement contains no specific language which suggests that a user can have his seller account terminated if he does not comply with the seller performance standards. eBay now imposes the reference to Buyer Protection states in pertinent part "Buyers and sellers agree to follow the requirements of the eBay Buyer Protection Policy with respect to claims. No mention is made of seller performance. Therefore, the agreement is vague and nonspecific. The least sophisticated consumer, upon reading the agreement, would have no clue as to the ramifications of the seller performance standards, which are hidden in a different policy statement and are further undefined therein.

## VII. LEGAL POSITION AND SUMMARY OF SPECIFICS:

30) This case presents a distinction between a contractual obligation, and how, and with what intent that obligation is, or is not, performed. A case of "simple" fraud, bad faith, breach of contract, etc. is one thing; the underlying pattern of racketeering that produces the surface appearance of these simple symptoms is a different and separate matter, and one which can fall under federal jurisdiction. In this case, Plaintiffs claim this situation exists.

31) Here, Plaintiffs plead not on the issue of performance, but rather on the issue of the pattern of actions, motives and intent of nonperformance, all of which extends into the area of due process, and its denial.

32) Plaintiffs allege, most generally, that underlying the symptoms of this clear nonperformance is a motive and pattern of extortion and racketeering activity, from which Defendants do derive, and knew or should have known that they did derive, great financial benefit, even if perpetrated on only a small percentage of claimants.

33) It stands to reason that these violations of RICO and Hobbs in a pattern of racketeering activity could not have been applied with such aplomb, and systematic consistency to Plaintiffs, without inferring that Defendants have these systems and patterns of racketeering activities internally institutionalized in such a way that this is their "pattern of doing business".

34) Indeed, there are other examples of these very same patterns being used with others of Defendants' customers who make legitimate claims.

## VIII. AS AND FOR CAUSES OF ACTION, PLAINTIFFS HEREIN COMPLAIN MORE SPECIFICALLY UPON U.S. CODE, COMMON LAW, AND THE CONSTITUTION OF THE UNITED STATES, OF DEFENDANTS':

35)

1. CONSPIRACY TO VIOLATE, AND VIOLATIONS OF

a) 18 USC 1961-1968a (RICO)

as well as violations of

b) 18 USC 1951 (Hobbs Act),

2. Tortuous Interference with Contract,

3. Abuse of the Legal Process,

4. Malicious denial of due process,

and seek relief from the Court for:

continuing violation, and for proximate damages caused thereby, as outlined below. In order to conform to FRCP Rule 8, and not to burden the Court, the outline in this complaint contains only statements, together with documentation, of the small number of predicate acts that are required under RICO and Hobbs in order to avoid the anticipated motion to dismiss on the basis of insubstantiality. Supporting documents submitted now are only a demonstration to the court that this complaint has genuine merit, is not an exercise in legal sophistry, and more importantly that it is substantive in law and in damages.

36) Plaintiffs allege that the "predicate acts" of Defendants under both RICO and Hobbs, do establish a pattern of racketeering, and extortion, by Defendants which constitute the "enterprise".

37) A "Pattern of Racketeering activity" is defined to be a pattern that has both continuity and relationship. Plaintiffs believe this pattern began since Defendants started doing business in Ohio; it continues to this moment, and there is certainly a threat that such activity will continue into the future. The activities of racketeering continue, and there is no evidence available to Plaintiffs that even suggests discontinuance of these activities. Continuation of this pattern by Defendants is also a continuation of damages to Plaintiffs.

38) Plaintiffs further allege that this pattern contains a sequence of events, over years, that all have the same and common purpose, and that that purpose is one of egregiously deliberate, calculated and malicious, fraud and extortion which is a "pattern of racketeering activity".

39) The particular complaints of RICO and Hobbs violations, i.e., instances of predicate, and explicitly prohibited acts, for each plaintiff, as documented assertions, are as follows:

40) Plaintiff John Allen alleges patterns of,

1. FRAUD:

Malicious, reckless and unwarranted denial of previously used advertising.

2. CONSPIRACY TO COMMIT FRAUD:

a) On information and belief, Defendants never indicated any variance from or disapproval of these activities.

b) It is highly unlikely, within any corporate structure, that anyone with Defendants' assumed authority could act independently and without guidance in corporate policy from yet higher authority.

c) Further refusal by the parent company to address, correct or condemn the herein activities is once again, a token of consent and aid to these activities.

3. EXTORTION:

The fear inducing continuation of the above malicious denial which exists to this moment, continuing delays, and abuse of process, are all causes for this Plaintiff to suffer frustration, anguish, anxiety and even physical discomfort.

4. WIRE FRAUD:

Both the Internet and emails were used in the continued fraud, conspiracy to commit fraud, and in the continuation of this fraud and fear inducing extortion.

41) From this continuing, egregious and malicious pattern of racketeering and extortion by Defendants, in violation of RICO and Hobbs, and also because Defendants are:

1. in violation of contractual fiduciary duty,

2. as well as common laws prohibiting fraud, extortion and theft,

Plaintiffs allege further that as a proximate cause of Defendants' Pattern of Racketeering activities, Plaintiffs have suffered, great, permanent and irreparable physical, psychological, emotional, spiritual and financial harm and damage, all of which has left Plaintiffs destitute, unable to work and unable to live as independent and productive human beings.

42) Plaintiffs allege that the people in Ohio doing business with Defendants have also been personally and financially damaged, through their sense of justice, and in their attempt to mitigate and contain, to the best of their ability, the damages of proximate cause that have been maliciously and insistently inflicted by Defendants, on Plaintiffs, ever since Defendants have been doing business in Ohio.

**IX. REGARDING THE RACKETEERING "ENTERPRISE": FRCP 19(c)**

43) While Plaintiffs understand that the whole of this enterprise necessarily extends to the Ohio Department of Consumer Protection and even to the Government of the State of Ohio, Plaintiffs decline to request waivers of State's rights provided under the Eleventh Amendment of the Constitution of the U. S., and so do not include these Defendants in this action at this time.

**X. RELIEF SOUGHT:**

44) Any relief from continuing racketeering and extortion activities, the prohibited acts of RICO and Hobbs, under intervention provided in 28 USC 1367, that the court can give.

45) Plaintiffs understand that, ultimately from amendments III and XI of the constitution and by U. S., Sup. Ct. precedent, this court may not remove this case to any other jurisdiction or venue, but Plaintiffs see no reason why Federal intervention by way of court order is not allowed and appropriate when the actions (the how, not the what) of the Defendants' actions are in violation of US Code, and when such U.S. Code automatically has Federal District Court jurisdiction.

46) Compensatory Relief in the form of $4,470,000.00, trebled to $13,410,000.00 for direct and proximately caused damages to the well being and finances of Plaintiffs stemming from Defendants' actions, as will be outlined and apportioned, which damages will have such lifelong irreparable effect as severe pain, severe disabilities and severe impairments, that permanently prohibit Plaintiffs from being self supporting, productive individuals.

47) Such compensatory damages, plus interest, as may be verified and claimed by the persons and entities upon whose behalf Plaintiffs also complain, by virtue of existing contractual agreements, in accordance with FRCP Rule 71.

48) Punitive damages in the amount of $10,000,000.00.

49) Any damages, plus interest, that may be payable and due, to the Court itself, in compensation for whatever relief the Court itself may have accorded the Plaintiffs; this, since Plaintiffs' inability to defend themselves otherwise is a direct consequence of the Plaintiffs' destitution, which is caused by the unabated insistence on a clear pattern of racketeering activity engaged in within the "enterprise".

50) All Plaintiffs' Costs in this litigation, and as well, just compensation for the destructive and onerous work and effort that has been forced, under duress and extortion, upon Plaintiffs by Defendants' actions; Plaintiffs request special consideration from the court in a determination of attorneys' fees, by the court, in recognition of the work done, and cost of necessary tools required to act as attorneys, Pro Se.

51) Restitution of all fees paid to Defendants, over and above that which was paid as any minimum required by State Law, for any services that Defendants have purported to provide, over any time that Defendants has ever been paid for such purported services.

52) And finally, any further damages of whatever kind that the Court may deem suitable, just or appropriate, to Plaintiffs, the Court, or any persons or entities upon whose behalf the Plaintiffs also complain.

## XI. DEMAND FOR JUDGMENT AND TRIAL BY JURY

53) On the basis of all the foregoing, Plaintiffs demand judgment for the stated relief, in trial by jury.

## XII. PLAINTIFFS' AVERMENT REGARDING RULE 11, FRCP

54) Further extant evidence and argumentation, elucidating the pattern of racketeering activity, and information which will be acquired in the process of discovery, will establish the necessary preponderance of evidence as is required by the Court in accordance with the Federal Rules of Civil Procedure.

55) In particular, with regard to Rule 11 of FRCP, Plaintiffs aver that all statements and allegations are true upon information, belief, and reasonable investigation, and further that this action is not brought with any purpose to harass or defame Defendants, and further that it is not of any nature that could be called frivolous.

56) Plaintiffs have, in good faith, attempted to balance the necessary requirements of specificity and particularity, under Rule 9(f) of FRCP to establish sufficiency of this pleading, with the requirements of concision and directness under Rule 8(e) of FRCP, all in accordance with Rule 11 of FRCP.

Wherefore, Plaintiffs respectfully request that this court enter judgment in favor of Plaintiffs and against Defendants, both jointly and severally.

Dated: April 3, 2020

All Rights Reserved,

John Allen